

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 OCT -1  PM 3: 38

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
AS⟩

LATRICE D. HAYWOOD, Individually and as
Administratrix of the Estate of James Haywood,
Plaintiff,

-vs-

OFFICER RICHARD JOHNSON; OFFICER
SCOTT ROBERSON; and THE CITY OF
ELGIN, TEXAS,
Defendants.

Case No.  A-13-CA-355-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendants' Motion for Summary Judgment [#38], Plaintiff's Response [#43], and

Defendants' Reply [#47].  Having reviewed the documents, the governing law, and the file as a

whole, the Court now enters the following opinion and orders GRANTING the motion.

### Background

On November 27, 2011, Officers Scott Roberson and Richard Johnson of the Elgin Police

Department were dispatched to 214 Houston Street, Elgin, Texas, in response to a reported

disturbance.[1]  Upon his arrival, Roberson saw a truck leaving the residence in question, flashed his

---

[1] Defendants have presented evidence in the form of three DVDs, which are three different patrol car videos, with accompanying audio, documenting the incident in question.  The Court has reviewed these DVDs in assessing the factual record in this case.  The first DVD is Officer Roberson's patrol car video, and it depicts roughly the time period from Roberson's arrival at 214 Houston Street around 2:21:15 a.m. on the morning of November 27, 2011, until the point Roberson arrives at the Elgin Police Department with Haywood in the backseat around 2:47:15 a.m.  See Defs.' Mot. Summ. J. [#38-1], Ex. A, Attach. 3 (Roberson Video).  The video angle appears to be from the car's dashboard looking forward; there is no separate feed showing the backseat of Roberson's vehicle.  The second DVD is Officer Johnson's patrol car video, and it depicts roughly the time period from Johnson's arrival at 214 Houston Street until the point a tow truck driver arrives to take away Haywood's vehicle at 3:01:00 a.m.  See id., Attach. 4, Disc 1 (Johnson Video 1).  The

lights in order to stop the truck, parked his car next to the parked truck, and investigated the situation. Johnson also parked his car in front of the truck. *See* Johnson Video 1, at 2:31:11. Roberson engaged a woman resident of 214 Houston Street who reported she and the individual in the truck, James Haywood, were having an argument, and she did not want Haywood at the house. Apparently, Haywood had agreed to leave, and Roberson and Johnson arrived on the scene as he was exiting.

After learning from the woman resident nobody was hurt in the argument, Roberson approached Haywood in the truck, and said, "What you got there?" followed a few seconds later by "let's have it," indicating Haywood handed over the object of Roberson's inquiry, and a few seconds after that point Roberson asked Haywood to step out of the vehicle. Roberson Video, at 2:23:30–2:23:50. In a voluntary, sworn statement provided to a Texas Ranger conducting the post-incident investigation, Roberson said he observed Haywood eating a white substance from a cellophane bag. Defs.' Mot. Summ. J. [#38-1], Ex. A, Attach. 2 (Roberson Statement). He also stated he observed the white substance on Haywood's mouth and the cellophane bag. *Id.* At this point, Roberson thought the substance ingested was cocaine, but he was not sure. *Id.* Roberson told Johnson: "He was putting something in his mouth. I think it's some . . . crack or what it was." Roberson Video, at 2:24:10; Johnson Video 1, at 2:33:30. A few minutes later, Roberson told

___

clock on Johnson's video does not appear to be in sync with the clock in Roberson's video. Specifically, Roberson's video appears to be roughly ten minutes ahead of Johnson's. This discrepancy is not material to the issues in this case but should be noted when considering the specific citations to the videos. The video angle on Johnson's video is from the patrol car's dashboard looking forward, and there is also a second angle in the lower right corner of the frame showing the backseat of Johnson's vehicle. The third DVD is again Officer Johnson's patrol car video, and it depicts roughly the time period from the moment Haywood begins to seize in the backseat of his patrol car around 3:58:19 a.m. until the time EMS leaves the Bastrop County Jail to take Haywood to the Smithville Hospital around 4:38:00 a.m. *Id.*, Attach. 4, Disc 2 (Johnson Video 2). This video captures the same two angles as Johnson Video 1. The description of events from the morning of November 27, 2011, is largely taken from the Court's thorough viewing of these three DVDs.

Johnson: "Here's his wallet.  I threw it up there when he was chowing down on the crack." Roberson Video, at 2:37:52.

Over the next approximately twenty minutes, Roberson and Johnson jointly conducted a search of the vehicle and investigated the records on Haywood and the truck he was driving.  During the search, Haywood admitted to having marijuana in the truck and assisted Roberson in locating it.  In all, Roberson discovered marijuana in a duffle bag, additional marijuana on the backseat floorboard, and three cellophane bags where Haywood had been sitting.  *See* Roberson Statement. Roberson further noted one bag to have two small pieces of a white substance while the remaining two bags contained only a residual amount that did not contain enough for consumption or to be tested.  *Id.*  During the entire course of the stop and search, Haywood was calm, respectful, and cooperative, as were Roberson and Johnson.  For instance, Haywood told Roberson: "The one thing about me, I'm going to be honest with you," to which Roberson replied: "Appreciate that." Roberson Video, at 2:36:07.

After completing the on-scene investigation, Roberson indicated to Johnson he planned to take Haywood to the Elgin Police Department. *Id.* at 2:41:18. Before they left, Roberson again tried to get Haywood to tell him about the white substance he had found in the vehicle and what Haywood appeared to have been eating.  Roberson asked Haywood: "Was that crack or what was that you were eating?" *Id.* at 2:41:45.  Haywood's response was inaudible.  Roberson inquired again: "What was that you were eating?  Was that crack?  I mean, I got to trust you.  I'm going to test it cause I got enough to test.  I was just, you said you were going to be honest, I didn't know.  Just some straight up coke?"  No clear response can be heard from Haywood, and Roberson then began the drive to the Elgin Police Department with Haywood in the backseat. *Id.* at 2:42:30.

On the drive, Roberson continued his effort to find out from Haywood the substance he may have ingested. He asked Haywood, "I don't know what you ate right now, but is it anything that you're going to need medical attention for later? Like you didn't take too much where it's going to screw you up is it?" *Id.* at 2:44:13. While not clearly audible, Haywood's response appears to be "no" given Roberson's reply: "Ok. That's my main concern, ok? I don't want you to have a heart attack or whatever. Or if I need to call EMS for you cause you start freaking out, go unconscious, it'd be nice to know what it was, but you say it's not enough." *Id.* at 2:44:22–2:44:45. While no response can be heard from Haywood, Roberson later stated Haywood appeared okay to him. *See* Roberson Statement. A few minutes later, Roberson and Haywood arrived at the Elgin Police Department, and Roberson's video ends. *Id.* at 2:47:00.

Apparently, there is no video evidence documenting the events at the police department. The only evidence in the record is Roberson's statement to the Texas Ranger in which he reported that upon arrival at the police department, he began to process the paperwork needed to book Haywood into the Bastrop County Jail. *See* Roberson Statement. Roberson stated he observed Haywood, and Haywood showed no signs of intoxication or impairment. *Id.* Roberson further wrote he talked with Haywood during the entire process and photographed him. *Id.*; *see also* Defs.' Mot. Summ. J. [#38-1], Ex. A, Attach. 5 (booking photograph of Haywood). According to Roberson, Haywood was steady on his feet climbing the stairs, he was able to talk coherently, and he showed no signs of impairment. *See* Roberson Statement.

Meanwhile, Johnson had remained behind at the scene of the stop to wait for a wrecker to tow Haywood's truck, and once this occurred, he returned to the Elgin Police Department and offered to drive Haywood to the Bastrop County Jail for Roberson in order to allow Roberson to

complete the booking paperwork, end his shift on time, and avoid working overtime.  *See* Johnson Statement, at 1–2.  The video evidence picks back up with Officer Johnson driving Haywood from the Elgin Police Department to the Bastrop County Jail.  *See* Johnson Video 2.  According to statements Johnson made soon after his arrival at the Bastrop County Jail to an individual named "Bill," he did not initially have the patrol car video turned on for the trip from the Elgin Police Department to the Bastrop County Jail.  *Id.* at 4:31:30.  Johnson indicated he was talking with Haywood, who was speaking to Johnson in a clear manner, but at some point he noticed Haywood slumping over and beginning to experience seizures.  *Id.*; *see also* Defs.' Mot. Summ. J. [#38-2], Ex. B, Attach. 3 (Johnson's voluntary, sworn statement, or Johnson Statement, to a Texas Ranger post-incident).  In response, he turned on his sirens and activated his camera, which begins recording at 3:58:19.  *Id.*

Johnson arranged to have EMS meet him at the Bastrop County Jail where Johnson arrived at approximately 3:59:05.  Back at the Elgin Police Department, Roberson had tested the white substance, which tested positive as cocaine.  *See* Roberson Statement.  Roberson said he heard Johnson relay Haywood's situation over the radio, and Roberson informed Johnson of the positive test for cocaine, so Johnson could, in turn, inform the medical personnel treating Haywood.  *Id.* Upon arrival at the Bastrop County Jail, Johnson attempted to unbuckle Haywood to remove him from the vehicle, but he was unable to do so by himself.  Haywood was completely non-responsive, interrupted by episodes of seizures.

Johnson also contacted the Bastrop County Jail personnel, and within a few minutes of his arrival, a nurse and four jailers came outside to provide medical assistance.  Johnson Video 2, at 4:04:45; Johnson Statement, at 2.  The nurse asked Johnson what happened, and he responded: "He

just started seizing about two-quarters of a mile out." Johnson Video 2, at 4:05:00. The nurse then placed a blood pressure cup on Haywood's arm, attempted to elicit a response from Haywood, checked his pulse, and took over the medical treatment of Haywood from Johnson. Over the next few minutes, the Bastrop County Jail personnel monitored Haywood's condition, but he was entirely unresponsive. Around 4:10:00, they unlocked Haywood's handcuffs, removed him from the vehicle, and placed him down on the concrete outside the camera's scope. At 4:12:40, the nurse emphasized "they," presumably meaning EMS, "need to get here now." The jail personnel provided Haywood oxygen and indicated there was a faint heartbeat, at least as of 4:13:15. At 4:14:00, the nurse seemed to indicate she was going to go ahead and initiate CPR. EMS arrived at 4:18:30. EMS took over Haywood's medical treatment and placed him into the EMS van around 4:23:00.

In the meantime, Johnson no longer had an active role in Haywood's care. He made a phone call to "Bill" around 4:27:45 and reported on what had taken place. He stated Haywood was arrested for possession of marijuana, cocaine, and for a disturbance. He further declared: "So while we were dealing with the disturbance, [Haywood] very well may have eaten some rock." *Id.* at 4:28:50. Johnson reiterated how cooperative Haywood had been through the entire process. *Id.*

Around 4:38:00, the EMS truck drove away with Haywood in the back to the Smithville Hospital where Haywood was ultimately declared dead. According to the medical examiner, he died of "acute cocaine and ethanol toxicity." Defs.' Mot. Summ. J. [#38-5], Ex. E (Med. Exam'r Report), at 4.

On April 30, 2013, Plaintiff Latrice D. Haywood, the wife of the deceased and the mother of one of his minor children who has also been appointed the administratrix of the Estate of James Haywood, filed a lawsuit in this Court, both individually and in her capacity as administratrix. *See*

Compl. [#1].   In her Amended Complaint, Plaintiff sues Roberson individually; Johnson individually; the City of Elgin, Texas; Dr. Wei-Ann Lin; and Bastrop County.  *See* Am. Compl. [#21], ¶¶ 2–3.  Subsequently, the Court granted Plaintiff's motion to dismiss Defendants Lin and Bastrop County.  *See* Order of May 30, 2014 [#41].

Plaintiff alleges individual Defendants Roberson and Johnson: (1) violated Haywood's Fourth Amendment rights by using excessive force; and (2) violated Haywood's Fourteenth Amendment rights by being deliberately indifferent to his medical needs.  *See* Am. Compl. [#21], ¶¶ 11–12.  Concerning the City of Elgin, Plaintiff contends it violated Haywood's rights "by failing to train its employees and police officers on the correct and proper medical actions to take in situations where they suspect and/or know that a person has consumed cocaine and other danger[ous] controlled substances."  *Id.*, ¶ 15.  Plaintiff further asserts an assortment of state law claims, including assault and battery and "violat[ions of] Haywood's rights under the Texas laws including Texas Wrongful Death and Survivor's Statutes and Texas Tort Claims laws as well as common laws."  *Id.*, ¶¶ 13–14.  Finally, Plaintiff alleges Defendants' actions amounted to gross negligence. *Id.*, ¶ 14.

Defendants have now moved for summary judgment, arguing the individual officers are entitled to judgment because they did not violate Haywood's constitutional rights and are entitled to qualified immunity, while the City of Elgin is entitled to judgment because no policy, pattern or practice of the City was done—or not done—with conscious indifference to Haywood's constitutional rights.  *See* Defs.' Mot. Summ. J. [#38], at 1–2.  Plaintiff responded, Defendants replied, and the motion is ripe for the Court's consideration.

## Analysis

### I.      Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

### A.   Claims against Roberson and Johnson

Roberson and Johnson have asserted qualified immunity. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Id.* The qualified immunity analysis itself involves two considerations: (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

1.      **Excessive Force**

Plaintiff contends Roberson and Johnson violated Haywood's Fourth Amendment rights by exercising excessive force. It is clearly established the Fourth Amendment confers a right "to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "To overcome the officers' claim of qualified immunity on [a] claim of excessive force, [Plaintiff] must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id.* at 628 (internal quotation marks omitted).

There is no evidence in the record either Roberson or Johnson used excessive force on Haywood. Plaintiff has not brought forth evidence of any element of an excessive force claim. Indeed, Plaintiff, in her response, does not even mention the excessive force claim, instead focusing on the deliberate indifference claim. As there is no factual dispute, the Court concludes Roberson Johnson are entitled to judgment concerning Plaintiff's excessive force claims.

2.      **Deliberate Indifference to Haywood's Medical Needs**

Plaintiff contends Roberson and Johnson violated Haywood's Fourteenth Amendment rights by being deliberately indifferent to his medical needs. "'Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.'" *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)). To show subjective deliberate indifference, Plaintiff must present evidence: (1) the defendant had subjective knowledge of "facts from which an inference of substantial risk of serious harm could be drawn," (2) the defendant drew that inference, and (3) the defendant's response to the risk indicates he subjectively intended the harm to occur." *Id.* (citing *Thompson v. Upshur Cnty.,*

-10-

*Tex.*, 245 F.3d 447, 458–59 (5th Cir. 2001)). "Mere negligence or a failure to act reasonably is not enough." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

### i.     Roberson

Plaintiff fails to satisfy her burden on her deliberate indifference claim against Roberson. First, the evidence indicates Roberson did not have subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn. There is no doubt Roberson observed Haywood eating a white substance, but it is also clear Roberson did not know for sure what exactly the white substance was nor could he discern how much Haywood had consumed.

Under oath, Roberson stated he thought the substance ingested was cocaine, but he was not sure. His questioning throughout his interaction with Haywood supports this position. Roberson asked Haywood as soon as he observed him eating the white substance: "What you got there?" Roberson later told Johnson: "He was putting something in his mouth. I think it's some . . . crack or what it was." While at one point Roberson did affirmatively state he threw Haywood's wallet up on the dashboard "when [Haywood] was chowing down on the crack," Roberson's's statements and questions afterward indicate Roberson continued to be unsure of what Haywood had been eating. For instance, Roberson, before leaving for the Elgin Police Department, asked Haywood multiple times if what he ate had been crack. Haywood never appears to give any clear response. Roberson persists in questioning Haywood on the ride to the Elgin Police Department regarding what the white substance was and how much had been consumed. Roberson asked, "I don't know what you ate right now, but is it anything that you're going to need medical attention for later? Like you didn't take too much where it's going to screw you up is it?" Roberson further stated "it'd be nice to know what it was, but you say it's not enough."

-11-

The evidence further indicates Roberson and Haywood shared a cooperative dynamic in which Haywood was forthcoming with the marijuana he illegally possessed and emphasized his own honesty. Roberson appreciated this honesty, and his questions about the white substance reflect his reliance on Haywood's honest behavior. For example, Roberson's audible statements suggested Haywood's inaudible responses were to the effect that Haywood had not consumed enough of the white substance for it to be a concern, and Roberson, at least to some extent, accepted this representation even though he still wanted to know for sure if it had been cocaine.

In addition, throughout Roberson's interaction with Haywood, the detainee, at all times, was calm, responsive, and cooperative, and there is no evidence Haywood behaved in a manner, while in Roberson's presence, indicative of an individual in need of immediate medical attention. The video evidence from the scene of the stop through the arrival at Elgin Police Department supports this position. While there is no video of Haywood at the Elgin Police Department, Roberson swore under oath Haywood's behavior while being booked was normal, and he showed no signs of intoxication or impairment. Finally, there is no evidence Haywood, despite repeated efforts by Roberson to confirm his suspicions, ever indicated he had eaten cocaine—much less an amount of cocaine to be cause for concern—and his behavior, at all times while in the presence of Roberson, did not evince an individual who had eaten a dangerous amount of cocaine.[2]

---

[2]In her response, Plaintiff does not present any evidence to contradict this record, and instead argues there is missing evidence in an effort to create a fact issue. Plaintiff highlights the fact the Roberson Video does not have a separate angle capturing activity in the backseat unlike the Johnson Video. Plaintiff points to deposition testimony from Roberson, in which Roberson, according to Plaintiff, indicated there was a video recording of the backseat. *See* Pl.'s Resp. [#43], at 5–6. Plaintiff's argument is there is a missing videotape being intentionally withheld and which must contain evidence Haywood was convulsing during the drive to the Elgin Police Department. *Id.* at 9. The Court rejects this proposition as baseless. First, the deposition testimony referenced was in response to a confusing series of questions not clearly distinguishing between audio and video. *See id.* [#43-1], Ex. A (Roberson Depo.), at 44:11–45:5 ("So whatever Mr. Haywood was doing in the back seat would have been on the video camera and the tape and all this stuff before us, is that right?"). Second, Defendants have represented to the Court they have produced all of the available audio and video recorded from the incident in question. *See* Defs.' Reply [#47], at 1–2. Third, the evidence currently

In sum, the record indicates (1) Roberson never knew for certain Haywood had consumed cocaine; (2) Roberson never knew how much cocaine Haywood had eaten; (3) Roberson believed Haywood when he indicated there was no cause for concern; and (4) Haywood's manner and physical symptoms did not signal he was actually in need of emergency medical care. Therefore, Plaintiff has not met her burden on the first element of deliberate indifference, and Roberson is entitled to summary judgment on this claim against him via qualified immunity.[3]

Alternatively, even if the Court concluded there was a fact issue on this point, Plaintiff still fails to satisfy her burden on the third element of deliberate indifference.[4]  To the contrary, Roberson's response to the risk Haywood had consumed a dangerous amount of cocaine indicates he was concerned about the harm that might occur and wanted to prevent it from happening. While never seeming to get a clear answer from Haywood, Roberson repeatedly tried to elicit the identity of the white substance Haywood appeared to have ingested.  On the ride to the Elgin Police

---

in the record contradicts any notion Haywood was seizing in the back of Roberson's car as Plaintiff suggests the missing videotape would show. The produced DVDs contain audio from Roberson, indicating he was conversing with Roberson and at no point does Roberson react in a fashion consistent with Haywood being in a medical emergency. Roberson stated Haywood's behavior at the Elgin Police Department was normal, and Haywood's booking photo corroborates this characterization.  Finally, if there were truly any grounds for suspecting Defendants were intentionally concealing evidence, Plaintiff could have filed a motion to compel, thereby giving the Court an opportunity to resolve the matter. Plaintiff has failed to do so.  To the extent Plaintiff argues there are factual disputes based on missing video or audio from the night in question, the Court rejects the contention.

[3]Plaintiff also attempts to create a fact issue by impugning Roberson's credibility. Specifically, Plaintiff dredges up Roberson's employment history and, in particular, his termination from the Taylor Police Department in 2005. *See* Pl.'s Resp. [#43], at 8.  The Court has reviewed the record with respect to Roberson's employment history and finds it totally irrelevant to the issues of this case, namely whether Roberson acted with deliberate indifference to Haywood's medical needs on the morning of November 27, 2011.

[4]If the Court assumes Plaintiff satisfied her burden on the first element (i.e., whether Roberson had subjective knowledge Haywood had eaten (or at least believed there was a strong likelihood he had eaten) a sufficient amount of cocaine from which he could infer Haywood was at substantial risk of serious harm, the Court finds the second element of deliberate indifference (i.e., whether Roberson actually drew that inference) would also be satisfied.  Roberson's statements on the drive to the Elgin Police Department clearly demonstrate his awareness of the harm which could occur if Haywood had indeed consumed a sufficient amount of cocaine.

Department, Roberson specifically stated his "main concern" was whether Haywood had eaten an amount of cocaine that would require medical attention, and he made clear, "I don't want you to have a heart attack or whatever." Roberson expressed the importance of knowing what Haywood had consumed because this information would be helpful to EMS if they had to be called in the event Haywood experienced a medical emergency. In fact, Roberson, after Haywood and Johnson departed for the Bastrop County Jail, tested the white substance and confirmed it was cocaine. When he heard Johnson on the radio calling for EMS due to Haywood's convulsions, Roberson contacted Johnson to inform him Haywood indeed had eaten cocaine, allowing Johnson to, in turn, inform EMS. Clearly, Roberson was concerned about Haywood's health and wanted to prevent harm from coming Haywood's way. On this alternative ground, Roberson is entitled to qualified immunity on the deliberate indifference claim.

### ii.    Johnson

Plaintiff also fails to satisfy her burden concerning deliberate indifference with respect to Johnson. Johnson's interaction with Haywood can be broken down into two separate phases: (1) the scene of the stop, and (2) the drive from the Elgin Police Department to the Bastrop County Jail. At the scene of the stop, there is no evidence Johnson knew anything Roberson did not know, and therefore the analysis described above regarding Roberson largely overlaps with Johnson. Roberson was the primary arresting officer in charge and the one who actually saw Haywood consuming the white substance. Johnson's knowledge Haywood had potentially eaten some cocaine came from Roberson. At all times Haywood was coherent and cooperative, and Johnson had no reason to believe Haywood faced a substantial risk of serious harm. Moreover, there is no evidence Johnson drew an inference of harm nor is there evidence he responded in such a way indicating he intended

Hayood to incur harm.  Roberson drove away for the Elgin Police Department with Haywood in the backseat in an apparently normal, calm condition.

With respect to the drive to the Bastrop County Jail, the first two elements of deliberate indifference are satisfied, but Plaintiff fails to create a fact issue on the third.  The only evidence of these events is the Johnson Video and Johnson Statement.  Based on this evidence, Johnson and Haywood were talking to one another when at some point Johnson noticed Haywood was slumped over and beginning to convulse.  Recognizing the emergency, Johnson, by his account, turned on his siren (as well as the camera recording device), and arranged for EMS to meet him at the Bastrop County Jail.  He further contacted Bastrop County Jail personnel for help, and a nurse along with four jailers came outside to take over Haywood's medical care.  Eventually EMS arrived, assumed control, and took Haywood to the hospital.

The undisputed facts show Johnson, once Haywood began to experience seizures, was aware of facts from which he could infer a substantial risk of harm, and Johnson drew this inference considering his call for immediate medical assistance.  His response also, however, indicates he was concerned about Haywood's health and contacted medical authorities to treat Haywood's quickly-escalating situation.  Conversely, Johnson's response does not suggest he intended Haywood to suffer harm.  As such, Johnson is entitled to qualified immunity on Plaintiff's deliberate indifference claim against him.

Plaintiff has no evidence to dispute this account of events.  Plaintiff's only complaint is Johnson's failure to have the video and audio recording devices turned on sooner than the point where he claims Haywood started convulsing.  *See* Pl.'s Resp. [#43], at 10–11.  Plaintiff argues this was a violation of policy and insinuates Johnson is lying about what really occurred that evening.

-15-

*Id.* As stated above, the Court rejects any argument premised on withheld evidence. Moreover, the fact Johnson was not recording events prior to Haywood's seizures was not a violation of policy. The Elgin Police Department Policy requires officers operate video and audio recording equipment only until the "enforcement action" is completed. *See* Defs.' Reply [#47-1], Ex. A, ¶ 3. Here, the "enforcement action" was complete after Roberson processed the booking paperwork on Haywood at the Elgin Police Department. *Id.*

**B.    Claims against the City of Elgin**

Plaintiff argues the City of Elgin violated Haywood's rights "by failing to train its employees and police officers on the correct and proper medical actions to take in situations where they suspect and/or know that a person has consumed cocaine and other danger[ous] controlled substances." Am. Compl. [#21], ¶ 15. Although not specifically stated, Plaintiff's claim amounts to a "failure to train" claim under 42 U.S.C. § 1983. A government entity may be held liable under § 1983 if the entity's policy or custom inflicts a constitutionally cognizable injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In order to prevail on a municipal liability claim, a plaintiff must show "(a) that the policy itself violated federal law or authorized the deprivation of federal rights or (b) that the policy was adopted or maintained by the municipality's policy makers with deliberate indifference as to its known or obvious consequences." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). Simple negligence or even heightened negligence will not support liability. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

Inadequacy of police training can also serve as the basis for municipal liability under § 1983, but only if the failure to train amounts to deliberate indifference to the rights of individuals who come into contact with the police. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). If the

-16-

training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing "this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers." *Benavides v. Cnty. of Wilson*, 955 F.2d 969, 973 (5th Cir. 1992).

The record does not support Plaintiff's claim against the City of Elgin. First, as described above, Haywood's constitutional rights were not violated, so there can be no policy or custom which inflicted a constitutionally cognizable injury on Haywood. Second, Plaintiff has failed to actually identify any policy—or lack of policy—which might have violated federal law, authorized the deprivation of federal rights, or which was adopted or maintained with deliberate indifference as to known or obvious consequences.[5]

Concerning any failure to train, there is no evidence the City of Elgin failed to train Roberson or Johnson or that this failure to train amounted to deliberate indifference. Both officers were licensed by the State as peace officers and held valid certificates from the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE). *See* Defs.' Mot. Summ. J. [#38-1], Ex. A, Attach. 1 (Roberson TCLEOSE Training Summary); *id.* [#38-4], Ex. D (Johnson TCLEOSE Training Summary). Given the officers were state-certified, Plaintiffs has failed to meet her burden

---

[5]Plaintiff spends substantial time in her briefing arguing Roberson and Johnson violated various policies of the Elgin Police Department, including: (1) arrested persons must be seat-belted in the patrol vehicle before it moves; (2) smoking and the use of tobacco is prohibited in any City vehicle; (3) arrested individuals must be given Miranda warnings if they are to be questioned; (4) drugs should only be tested in the presence of a witness officer; and (5) if using a standard sedan without a screen, officers must place prisoners in the front passenger seat. *See* Pl.'s Resp. [#43], at 7–9. These policies and their supposed violation are completely irrelevant to the issues in this case regarding deliberate indifference. None of these policies provide a basis for municipal liability.

and present evidence this legal minimum of training was inadequate to enable Officers Johnson and Roberson to deal with the usual and recurring situations faced by jailers and peace officers.[6]

Because Plaintiff fails to create a genuine issue of fact on its failure to train claim, the City of Elgin is entitled to summary judgment.

## C.     State law claims

Although Plaintiff's pleadings do not make clear which state law claims she asserts against which parties, it is immaterial as none are viable. Any state law claims against the City of Elgin are barred by immunity. A municipality, as a political subdivision of the state, is not liable for the acts or conduct of its officers or employees unless the municipality's common law immunity is waived by the Texas Tort Claims Act (TTCA). *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). The applicable waiver provision of the TTCA provides in relevant part:

> A governmental unit in the state is liable for:
>
> > (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
> >
> > > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > >
> > > (B) the employee would be personally liable to the claimant according to Texas law; and

---

[6]While unclear, Plaintiff suggests in her Amended Complaint the City of Elgin failed to train not only Officers Johnson and Roberson but also the Bastrop County Jail personnel. *See* Am. Compl. [#21], at 8. To the extent Plaintiff asserts this claim, which they do not address in their Response [#43], the City of Elgin is entitled to judgment. There is no evidence in the record the City of Elgin failed to properly train the Bastrop County Jail nurse and jailers who took over Haywood's medical care from Johnson, and there is no evidence any such failure was done with deliberate indifference.

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. None of these waiver provisions apply to the facts of this case. First, Haywood's death did not arise from the operation of a motor-driven vehicle. Second, neither Roberson nor Johnson would be personally liable to Plaintiff according to Texas law for a variety of reasons. As one example, Roberson and Johnson are entitled to official immunity from the state law claims under state law because they performed discretionary duties in good faith while acting within the scope of their authority. *See City of Lancaster*, 883 S.W.2d at 653–54. Finally, Haywood's death was not caused by a condition or use of tangible personal or real property.

Additionally, Plaintiff's claims for assault and battery must be dismissed because the TTCA does not waive the City's immunity from common law intentional tort claims. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, . . . or any other intentional tort.").

The individual officers further assert they are entitled to automatic dismissal of the tort claims against them. The TTCA provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). The City of Elgin has so moved, and the Court grants the request. *See* Defs.' Mot. Summ. J. [#38], at 19. Moreover, as already stated, Roberson and Johnson are entitled to official immunity on Plaintiff's state law claims.

In sum, Plaintiff cannot maintain any of her state law claims against either the City of Elgin or Officers Roberson and Johnson. Therefore, Defendants are entitled to judgment on those claims.

**Conclusion**

The summary judgment record shows Defendant Officers Roberson and Johnson were not deliberately indifferent to James Haywood's medical needs on the morning of November 27, 2011. In addition, the record does not reflect a policy maintained by the City of Elgin with deliberate indifference and which was the moving force behind a violation of Haywood's constitutional rights. Defendants are entitled to judgment on the claims brought by Plaintiff in this lawsuit, both in her individual capacity and her role as administratrix of the Estate of James Haywood.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [#38] is GRANTED.

SIGNED this the 30th day of September 2014.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE